IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TARA SHULFER,

                Plaintiff,

v.                                                    OPINION and ORDER

KILOLO KIJAKAZI,[1]                                20-cv-586-jdp
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Tara Shulfer seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Shulfer was not disabled within the meaning of the Social Security Act. Shulfer contends that the administrative law judge (ALJ) who decided her case erred by: (1) failing to properly evaluate her claim that she could not work because of frequent migraines; (2) failing to analyze whether her migraine headaches met or equaled a listed impairment; and (3) failing to account for all of her mental health limitations. The court concludes that the ALJ's assessment of Shulfer's migraines was not supported by substantial evidence, so this case will be remanded for further proceedings.

BACKGROUND

Tara Shulfer applied for disability benefits in August 2017, when she was 36 years old. She alleged that she had been disabled since June 2017, due to ongoing side-effects from strokes

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

that she suffered in 2015. R. 272.[2] After her strokes, she returned to her job as a human resources recruiter, but she suffered chronic migraines, cognitive impairment, back and neck pain, vertigo, fatigue, anxiety, and post-traumatic stress disorder. R. 47, 272.

After the local disability agency denied her claim initially and on reconsideration, plaintiff requested an administrative hearing, which was held via videoconference on August 26, 2019 before ALJ Bill Laskaris. Shulfer had a non-attorney representative at the hearing. Shulfer testified that she stopped working in June 2017 because she was struggling with comprehension, anxiety, stress, and headaches. R. 59–60. She said that she had migraines every day, that she had to stay in bed because of headaches once a week, that she saw a neurologist for her headaches, and that she had tried Botox injections, muscle relaxers, neck injections, and oral medications to treat her headaches. *Id.* Shulfer testified that she could perform some household chores, like cooking and cleaning, but that she took breaks because of her headaches, back and hip pain, and weakness on her left side caused by her strokes. R. 55. She also testified that she had difficulty dressing herself, that she could no longer type on a computer, and that she took daily naps because of fatigue. R. 59.

In an October 2019 decision, the ALJ found that Shulfer was not disabled. R. 15–27. The ALJ applied the five-step sequential process for evaluating disability claims, 20 C.F.R. § 404.1520(a), and determined that: (1) Shulfer had not worked during the claim period; (2) she had the severe impairments of status post infarct, migraine, degenerative disc disease of the lumbar spine, degenerative joint disease of the hips, degenerative joint disease of the left knee, mild cognitive impairment, generalized anxiety disorder, and posttraumatic stress disorder; (3)

---

[2] Record cites are to the administrative record, located at Dkt. 17.

none of these impairments, whether considered singly or in combination, was severe enough to be presumptively disabling; (4) her impairments prevented her from performing her past relevant work; but that (5) she could perform other jobs that existed in significant numbers in the national economy. As a predicate to his findings at steps four and five, the ALJ found that Shulfer retained the residual functional capacity to perform a reduced range of light work. R. 20.

In assessing Shulfer's residual functional capacity, the ALJ reviewed Shulfer's reports of her symptoms, including her testimony that she had constant and severe head and neck pain, migraines every day, and headaches with visual aura five days a month. R. 20–21. The ALJ accepted that Shulfer's impairments could reasonably be expected to cause her reported symptoms, but he found that Shulfer's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical record and other evidence. R. 21. The ALJ also stated that the residual functional capacity assessment accounted for Shulfer's migraines by restricting Shulfer's exposure to environmental factors, including loud noises, vibrations, unprotected heights, moving machinery, or other hazards. R. 22. Specifically, the ALJ assessed Shulfer as having the residual functional capacity to:

> [P]erform light work . . . except that she can frequently push/pull with her left lower extremity and left upper extremity; can frequently operate of foot controls with the left foot; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs and balance; can frequently stoop, crouch, kneel, and crawl; can frequently handle objects with the left, dominant hand, that is gross manipulation; can frequently finger with the left, dominant hand, that is fine manipulation of items no smaller than the size of a paperclip; should avoid even moderate exposure to loud noise or frequent vibration; should avoid use or exposure to moving machinery, unprotected heights, or other hazards; work is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving

3

only simple, work-related decisions, and with few, if any, workplace changes.

R. 20.

Relying on a vocational expert's testimony, the ALJ found that with those limitations, Shulfer could adjust to certain light work available in the national economy, including mail clerk, office helper, and information clerk. R. 27.

## ANALYSIS

Shulfer challenges the ALJ's decision on three grounds. She contends that the ALJ erred by: (1) failing to properly evaluate her claim that she could not work because of frequent migraines; (2) failing to consider whether her migraine headaches were medically equivalent to Listing 11.02(B) (epilepsy); and (3) failing to account for all of Shulfer's mental health limitations.

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

### A. Migraines

#### 1. Subjective symptoms

Shulfer contends that the ALJ's residual functional capacity assessment failed to account for the pain and limitations caused by her migraines. In particular, she argues that the

ALJ did not account for her testimony that she'd had daily migraine headaches since June 2017, migraines with visual aura that required her to stay in bed about five times a month, severe head and neck pain, fatigue, and difficulty concentrating.

Shulfer's argument is persuasive. An ALJ's findings about a claimant's testimony regarding symptoms are entitled to great deference, and they should be upheld unless patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). But an ALJ must give reasons sufficient to provide a fair sense of how the ALJ assessed a claimant's testimony and statements. Social Security Ruling 16-3p. In this instance, the ALJ did not explain why he was rejecting Shulfer's testimony about her migraines beyond stating that her allegations regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical record and other evidence. AR 21. The ALJ pointed to no medical evidence that contradicted Shulfer's testimony. He instead cited medical reports showing that Shulfer had reported daily headaches since a car accident that occurred in December 2012; that she began reporting migraines after her strokes in 2015; that she'd reported constant headaches, nausea, blind spots, and visual aura since June 2017; that she'd complained to medical providers about headaches with intense pain around her head and neck; that she'd been treated by a neurologist for her headaches from June 2017 to the present; that she had tried nerve blocks, Botox and other types of injections, massage, and pain medications for her headaches; and that she continued to report ongoing pain and fatigue. R. 21. The ALJ cited these records relating to the frequency and severity of Shulfer's migraines without identifying contradictions or otherwise questioning their validity or usefulness.

If the ALJ accepted that Shulfer's migraines were as severe and limiting as she alleged, the ALJ was required to consider how her migraines would affect her ability to work. The ALJ

should have addressed whether Shulfer would need unscheduled breaks due to headaches. He also should have considered Shulfer's ability to concentrate, maintain pace, and satisfy attendance expectations in light of debilitating migraines. Because the ALJ failed to properly address Shulfer's statements and the medical records regarding her migraines, the ALJ's decision is not supported by substantial evidence.

The commissioner argues that the ALJ's decision is supported by the opinions of state agency reviewing physicians Leigh Thomas, M.D. and Douglas Chang, M.D., both of whom considered Shulfer's migraines and concluded that Shulfer could perform a reduced range of light work. R. 24 (citing R. 88–90, 105–07). This argument is not persuasive. It's true that Drs. Thomas and Chang opined that Shulfer could perform light work, and it's true that the ALJ found these opinions persuasive. R. 24. But that is not enough to show that the ALJ's residual functional capacity assessment is supported by substantial evidence. The state-agency doctors identified Shulfer's migraines as a severe impairment, but neither doctor made any specific findings about Shulfer's migraines, the ALJ did not cite the state-agency opinions when discussing Shulfer's migraines, and the ALJ himself acknowledged that Shulfer's migraines warranted greater restrictions than those suggested by the state-agency doctors. R. 22.

The commissioner next argues that the ALJ rejected Shulfer's subjective complaints of pain and limitations associated with her migraines based on Shulfer's ability to engage in a variety of daily activities. The commissioner is correct that the ALJ pointed to Shulfer's testimony that she could cook, clean, do laundry, go grocery shopping, drive, and handle finances. R. 23. But the ALJ did not say that Shulfer's daily activities, which she performed in between taking breaks and naps, undermined her alleged migraine symptoms or showed that she could work full time. Shulfer's testimony regarding her activities was not clearly

6

inconsistent with her testimony about the pain and exhaustion she experienced from her migraines.

The commissioner also argues that the ALJ's residual functional capacity assessment *did* accommodate Shulfer's migraines, because the ALJ limited Shulfer's exposure to loud noises, vibrations, unprotected heights, moving machinery, and other hazards. This argument also fails. The ALJ did not explain why those limitations would accommodate Shulfer's migraines. The ALJ cited nothing in the record suggesting that Shulfer's migraines were triggered by loud noises, vibrations, unprotected heights, or moving machinery, and Shulfer testified at the hearing that there was nothing in particular that triggered her migraines besides increased stress. R. 56. The ALJ failed to build a logical bridge between his findings and the residual functional capacity assessment.

### 2. Listing 11.02

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meet or medically equal the criteria of a listed impairment. 20 C.F.R. § 404.1520(d). If an ALJ determines that a claimant's impairments meet or equal a listing, the claimant is presumptively disabled. In this case, the ALJ stated that he considered several listed impairments at step three, including Listing 11.02, but that Shulfer's impairments did not meet or medically equal any of the listings. Shulfer contends that the ALJ erred by failing to find that her migraines medically equaled Listing 11.02(B), which is the listing for epilepsy, but which the parties agree is routinely applied in evaluating migraine headaches. *See Pawlowicz v. Saul*, No. 19-CV-537-BBC, 2020 WL 4001180, at *5 (W.D. Wis. July 15, 2020) (listings 11.02(B) and 11.02(D) guide the evaluation of migraines as step three); *Snow v.*

*Berryhill*, 2019 WL 1873551, at *4 (N.D. Ind. Apr. 26, 2019) (commissioner routinely considers migraines under criteria for epilepsy listing).

Listing 11.02(B) requires seizures (or in this case migraines) at least once a week for at least three consecutive months, despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 11.02(B). "Despite adherence to prescribed treatment" means that the claimant has taken medication or followed other treatment procedures for the neurological disorder as prescribed by a physician for three consecutive months, but the impairment continues to meet the other listing requirements despite the treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(C). Shulfer argues that her medical records and her own testimony show that she experienced at least one migraine a week for at least three months.

Shulfer's argument is persuasive. She has identified evidence suggesting that she experienced daily migraines for more than a year, that she had debilitating migraines once a week on average, and that she followed the treatments recommended by her neurologist. In light of this evidence, the ALJ erred by failing to provide any analysis of whether Shulfer's impairment medically equaled Listing 11.02(B). *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) *(*quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing.").

The commissioner argues that the ALJ relied on the administrative findings of the state-agency consultative physicians, who both considered Listing 11.02 and concluded that Shulfer did not meet or equal any listed impairment. R. 18 (citing R. 87–90, 103–07). But as discussed above, the state-agency doctors' opinions included no specific findings about Shulfer's migraines. The opinions identify Listing 11.02, but there is no discussion about whether the

doctors considered Shulfer's migraine impairment under Listing 11.02 or why the doctors concluded that Shulfer's impairments did not medically equal Listing 11.02(B).

In sum, the ALJ's evaluation of Shulfer's migraine symptoms lacks explanation and support in the record. This case must be remanded so the ALJ can perform a proper evaluation of Shulfer's migraine symptoms and whether Shulfer's impairments satisfy Listing 11.02(B).

## B. Mental residual functional capacity

The ALJ found that Shulfer had the mental residual functional capacity to perform "simple, routine, repetitive tasks," in a "work environment free of fast-paced production requirements," and "involving only simple, work-related decisions, and with few, if any, workplace changes." R. 20. Shulfer contends that the ALJ's assessment is not supported by substantial evidence, because the ALJ failed to adequately explain how he accounted for her moderate impairments in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace.

Shulfer's argument consists mostly of boilerplate citations and discussions about other cases, and would not provide an independent basis for remand. However, because this case will be remanded for other reasons, the ALJ should consider whether Shulfer's chronic pain and the restrictions caused by her migraines and other impairments would affect her ability to perform even simple tasks on a full-time and sustained basis.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Tara Shulfer is REVERSED, and this case is REMANDED to defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for further proceedings consistent with this opinion.

Entered September 23, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge